CHANCERY.

*Case* 159.

*October 8.*

The contents of John Nelson's will.

# Nelson's Executors *vs* Nelson, &c.

## APPEAL FROM THE LOUISVILLE CHANCERY COURT.

### *Wills. Mistakes.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

JOHN NELSON, by his last will, dated in March, 1843, and admitted to record in October, 1845, first gives all his estate to his four lawful children and his illegitimate daughter Charlotte, in the following manner, and after reciting that he had given to each of his four lawful children about the time of their marriage, about $3,000, as to which he considers them equal, proceeds substantially as follows : "And having given since that time, and principally within the last five years, to James Nelson, my first child, property, money, &c., which added to the $3,000, I consider worth the sum of $16,991; and having given within the same period, to S. V. B., my second child, property, money, &c., which added to the $3,000, I consider worth the sum of $6,632 ; and having given within the same period to David, my third child, property, money, &c., which added, &c., I consider worth $14,260 ; and to M. T., my fourth child, property, money, &c., which added, &c., I consider worth $12,300 ; and being prayerfully desirous of treating my four lawful children upon terms of perfect equality, that is, to give to one just as much of my estate as I give to the other, I do give and bequeath to said S. V. B. and her heirs, not only a sum which added to what I have already given her, will amount to the sum of $16,991, the sum already given to the said James, but a sum which will place her on as good a footing as she would be had I given to her the sum of $10,359 at the time of making this will, which sum was then justly due her, and which shall be determined by my

executors." The testator then gives to David and his heirs, not only a sum which added to that which had already been given, would amount to $16,991, the sum already given to James, but a sum which will place him on as good a footing as if he had given him the sum of $2,731 at the date of the will, &c. And in the same manner he gives to M. T. and her heirs, not only a sum which added to that already given, would amount to $16,991, the sum already given to James, but a sum which would place her on the same footing as if he had given her the sum of $4,691 at the date of the will. The will then provides that any future advances to either of his children, shall be disposed of with reference to the basis thus laid, and so as to produce equality on that basis; and after a small bequest to his illegitimate daughter Charlotte, requires that after the several sums that may remain due as above to the said Sarah, David and Mary and their heirs, and all other just debts are paid and the sum or sums that may be due said Charlotte are provided for, the remainder of his estate shall be equally divided between his four lawful children and their heirs. A codicil made in January, 1845, gives to his illegitimate daughter the sum of $408, instead of the sums given to her in the will, so that the will, so far as it was operative at his death, amounted to nothing more than a statement of the advances made to each of his four lawful children, and of the manner in which the desired equality should be produced. This is to be done by first paying to each of the three youngest children a specified sum, which is the difference between the amount stated to have been advanced to that child, and the amount stated to have been advanced to James, the eldest, and also such addition as would equalize the amount at the date of the will. And after payment of these sums and all other debts and the single additional legacy, the residue is to be equally divided between the four children.

This equal distribution after the ascertainment and equalization of the advances, the law itself would make. So that as between those who take under the will as distinct from the codicil, the whole purpose of the testator seems to have been to settle the amount of the advances

and the time of equalization. And the will provides by its last clause, that if any of the testator's children or their heirs, shall sue him or his estate, except for the sums above mentioned, the same should receive no part of his estate. Upon the face of the will the testator intended to secure what he considered equality among his children, but he intended to secure it by the charges and mode of equalization contained in the will; and it seems to be the prevailing object and character of the will to fix beyond question and beyond litigation, the amounts advanced to each of his four children, and the amount to be paid to each for producing the intended equality. This adjustment of advances made, and of balances to be paid for equalizing them, is the essential part if not the whole of the will. Is a Court of equity authorized to interfere with this adjustment, to alter the entire frame and effect of the will, and to remodel every devise on the ground that the testator was mistaken in the statement of the sum advanced to James, to which all the balance refer, and on which every bequest or devise is founded? Or can he enlarge or diminish the sum given to any one of the children on the ground of a mistake in the statement of the sum advanced to that child, and of the sum due to make up the equalization? If this can be done, what must be the character and quantum of evidence to prove the statements of the will to be incorrect? And how is it to be further proved that they were made by the testator in ignorance of the truth? And if all this be satisfactorily proved, must it be assumed that if the testator had not been ignorant of the truth, he would have made different dispositions of his estate, and will that assumption authorize the Chancellor to make such disposition of it as he presumes the testator would have made had he not been ignorant? These questions arise upon the bill of James Nelson, charging that the sum stated to have been advanced to him, exceeds the true sum by some five or six thousand dollars, and on the cross bill of David Nelson's heirs, making a similar charge with respect to the sum stated to have been advanced to said David; and on the decree of the Chancellor determining that an excess of $2,621 in the sum charged in the will against

James Nelson, and an excess of $490 in the charge against David, had been sufficiently established by the proof, and directing a settlement in which these errors should be corrected by charging James Nelson with $14,-370 instead of $16,991, and making the other devisees equal to him in the first named sum only, before a division, and charging David with $13,770, instead of $14,260.

The will, as has been seen, makes no reference to the items composing the several sums charged as advancements, nor to any book or paper containing them. But it appears that a statement of accounts against each devisee, had been made out shortly before the date of the will, and as a preparation for it, and although not referred to in the will, it is verified by the signature of the testator to a memorandum annexed in the following words: "The preceding accounts made out by my direction, viz: against James Nelson for $16,991, against David Nelson for $14,260, against Mary Tracy for $12,300, against Sarah Van Buskirk for $6,632, are correct and true, and are the sums named in my will as already given to them. January 22d, 1843." The accounts referred to consist of but few items, several of which in the cases of James and David, are evidently the results of particulars not expressed. The principal items objected to in the account of James are these, "To cash balance on account of purchase of your farm, $2,806." "To cash left with you at Tully, (1,230) less ($65,) your account, $1,165." "To logs, wood, sawed lumber, &c. &c. at Tully, $640." "To cash spent for you in building mill at Tully and in various other ways, $2,000." The two last items are also contained in the account against David, and are the principal charges objected to in that account.

Assuming, as we think may be safely done, that the sums stated in the will were taken from these accounts and include the items just specified; and conceding that proof of a mistake in the aggregate of these accounts, will prove a mistake in the will, and that satisfactory proof of such mistake would authorize the Court to correct it in the practical execution of the will, our reflections on this case and on others which might come within

Where the object of a testator as expressed seems to have been to distribute his estate equally amongst his children, including advances made, and he fixes the prices of the property given, or the a-

NELSON's EX'RS.
vs
NELSON.

mount of the advances made, the Chancellor has no power to alter the accounts so fixed by the testator as the basis of equalization, by placing a different value upon the advancements than that made by the testator, unless there be evidence of fraud.

the principle thus assumed, have brought us to the conclusion, that if any proof can be deemed sufficient for the purposes mentioned, it must be such as leaving no room for doubt or opposing inference, actually demonstrates the particular mistake and accounts for it, or at least establishes the conclusion that it was adopted in ignorance of the truth.

These accounts were obviously made out for the very purpose of demonstrating, not perhaps to the world, but to the particular individuals concerned, and who might be expected to understand them, the justice of the will. They may be presumed to have been made out or dictated or adopted by the testator under the influence of that prayerful desire for effecting equality among his children which is professed in the will; and their results are adopted in the will as the rule and basis of the intended equality. The propriety and justice of the charges, in view of the equality intended, were to some extent at least, dependent on the testator's own opinion or will, and the facts to which they relate, may have been peculiarly within the knowledge of himself and the particular individual against whom the charges were made. It was only necessary to the justice of the charges, that with a full knowledge of the facts, they should have been allowable *in foro conscientia.* It was only necessary, in order to sustain them in the will, that they should have been knowingly made, with a knowledge of their import and of the facts on which they were founded. There is no rule of justice applicable to the subject, but the will or opinion of the testator himself, acting without mistake of fact. It is not necessary that the correctness of the charge either in point of justice or of fact, should be admitted by the person to be affected by it or by others, nor that it should be proved or even provable. It is not necessary to sustain the charge in the will, that the particulars on which it is founded, should be stated there or elsewhere, for the inspection of others; and if so stated, it can be subject to no rule as to the form or specification of items. If unintelligible to others, it may be understood by the immediate parties. And though it be intelligible to the testator alone, if he understands it and is

satisfied with it, knowing the facts, no one has a right to reform it so as to affect the disposition of his estate which he has based upon it.

If the testator was not competent to understand the accounts which formed the basis and essence of his will, he was not competent to make the will, which really does no more than give effect to those accounts, and the objection should prevail against the whole will. If he was competent to understand the accounts and to make the will, the earnest desire to produce perfect equality in the distribution of his estate among his children, must be presumed to have been directed to the careful ascertainment of the correctness of the accounts and statements of advancements previously made, as being absolutely essential to the desired equality. And as, supposing him to have been competent, he must, with his knowledge of the facts to which the accounts refer, have been enabled without any extraordinary vigilance, to have detected any substantive error or mistake in the accounts, *his repeated verification of their correctness,* by the memorandum annexed to them, by their subsequent adoption into his will, by the repeated reiteration therein of the sums stated as advancements, by the particular statement in each case, of the sum necessary for equalization, and his failure for about two years which elapsed before his death, to make any correction or alteration, furnish evidence of the correctness of the charges, so far as their correctness depends either upon the truth of facts involved, or the justice in his opinion of the charges founded on them, which in our opinion is not only not overcome by any opposing evidence in the record, but which we do not perceive any effectual mode of overcoming, except by proof of fraud and imposition in making up the items of account, which if it did not prove incompetency, would like it, go to the entire will.

{ To enter more into detail: the Chancellor taking up the item of "$2,806, balance on account of purchase of your farm," takes from an account sent by the testator to his son James, about two years before the date of the will, and which would seem to be a full account, all the items of debit and credit which are referable to the farm

transaction, and bringing in a charge against James of $1,000 omitted in that account, but certainly belonging to that transaction, finds a balance less by about $1,600 than the balance charged in the account now in question. It being certain that the first account did not include all the items (for the item of $1,000 was omitted.) That account even as corrected by the addition of the item of $1,000 shown to have been omitted, furnishes no conclusive, nor even satisfactory test of the correctness of the last amount, unless it be assumed that it is incumbent on those who would sustain the last charge, to prove its correctness by showing the items included in it. It is not known what charges the testator may have finally deemed applicable to the farm transaction, or intelligible to his son under that head. And even the probability of an overcharge, which might be sufficient in an ordinary case of dealing between individuals, is not sufficient here. It was not incumbent on the executors or devisees to prove the account, and certainly not, to show that the heads under which the charges were made, embraced only such things as were properly described in the charge.

The item of $1,165 is also reduced, upon proof showing that the testator had received several hundred dollars, the proceeds of the money left with James at Tully, and had appropriated it in purchasing adjacent lands, afterwards conveyed with the will to James and David. But there is no proof of the circumstance under which this sum was received, nor whether compensation may not have been made for it. And if the testator was competent, and desirous of doing justice, every allowable presumption should be indulged, rather than suppose that this charge should have been plainly made, when the testator had in fact received back a large part of the money.

A third charge, the item of $640 for logs, &c. at Tully, was reduced in the accounts both of James and David, upon proof that the logs, lumber, &c. at Tully, at a particular time were sold for a small sum, which was divided between James and David, and were not worth more. But it is not shown that they had not received the benefit

of other logs, lumber, &c., or of other work of the mill, which might have been referred to in the charge. The probability is that they had.

No other charges were reduced. But it is alledged for error, that the charge of $2,000 in each of these accounts "for cash spent for you in building mill and in various other ways," was not expunged or reduced. Upon this charge, however, there is no direct proof. But if it is to be inferred that the whole of it referred to expenses in building the mill, which was afterwards conveyed to James and David as an advancement at the sum of $12,000, of which $6,000 is charged to each in this account, it would only prove that the testator considered the mill as being worth $16,000, and that he believed it just to make the additional charge in equalizing the distribution of his estate. Whether if it were so, he was right or not, we need not decide. We should not even upon the hypothesis assumed for the explanation of this charge, nor upon any other ground appearing, consider the Court as authorized to expunge it.

We need only add, that the same principles which apply to the attempt to reduce the charge against James and David, apply also to the attempt on the part of the executors to increase them. And that there is no sufficient evidence of fraud or imposition in making up the accounts or the will, to authorize the interposition of the Court of equity, as asked for in this case.

Wherefore, without deciding whether under any state of evidence, the charges against James and David Nelson, in the will of John Nelson, might not be corrected, the decree making the corrections as above noticed, is reversed, and the cause remanded, with directions to dismiss the bill of James Nelson, and cross bill of David Nelson's heirs, and for further proceedings on the bill of the executors not inconsistent with this opinion.

*Fry and Loughborough* for appellants ; *Pirtle & Speed* for appellee.